UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-----------------------------------------------------------x
In re:

                                                       Case No. 15-51582-ast

JACKIE A. DINARDO,

                                                       Chapter 7

               Debtor.
-----------------------------------------------------------x

## DECISION AND ORDER ON MOTION TO DISMISS UNDER SECTION 707(b)

*Appearances:*

| | |
|---|---|
| Douglas J. Lewis | Steven E. Mackey |
| Evans & Lewis | The Giaimo Federal Building |
| 93 Greenwood Avenue | 150 Court Street, Room 302 |
| Bethel, CT 06801 | New Haven, CT 06510 |
| *Attorney for Debtor* | *Office of the U.S. Trustee* |

HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE

This matter comes before the Court on the motion of William K. Harrington, the United States Trustee for Region 2 (the "UST"), seeking dismissal of this case pursuant to 11 U.S.C. § 707(b)(1), (2), and (3) for abuse of the provisions of chapter 7 of the Bankruptcy Code.[1] Debtor argues that as a preliminary matter, the UST's statement pursuant to § 704(b)(1)[2] (the "Ten-Day Statement") was not timely filed, therefore precluding the UST from proceeding on its motion to dismiss under either § 707(b)(2) or (3). For the reasons set forth below, this Court concludes that the relevant date by which the Ten-Day Statement must be filed runs from the conclusion, rather than the commencement, of the meeting of creditors under § 341(a), and that in any event, an untimely Ten-Day Statement does not prevent the UST from seeking dismissal under § 707(b)(2) or (3).

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (O), and the General Order of Reference dated September 21, 1984 in effect in the District of Connecticut.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

To the extent required, this decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, which are based on the undisputed allegations contained in the parties pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2015 (the "Petition Date"), Jackie A. DiNardo (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition"). [dkt item 1]

---

[1] References to the Bankruptcy Code are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*
[2] Unless otherwise indicated, statutory citations are to provisions of Title 11 of the United States Code.

1

According to the Petition, Debtor is an individual whose debts are primarily consumer debts.[3] [dkt item 1] On the Petition Date, Debtor also filed her Chapter 7 Statement of Current Monthly Income (the "CMI Form") and the Chapter 7 Means Test Calculation (the "Means Test Form") (Official Forms 22A-1 and 22A-2, respectively). [dkt item 3]

According to her CMI Form, Debtor reports current monthly income of $17,701.00, with an annual income of $212,412.00. Debtor further indicates that she has a household of three and that the presumption of abuse is determined by the Means Test Form. [dkt item 3] On the Means Test Form, Debtor lists her adjusted current monthly income as $17,701.00 and her total deductions from income as $18,518.62, leaving her with negative monthly disposable income of ($817.62). Accordingly, Debtor indicates there is no presumption of abuse. [dkt item 3]

The meeting of creditors pursuant to § 341(a) (the "§ 341 meeting") was held on December 10, 2015, and was subsequently continued to January 14, 2016.

On January 25, 2016, the UST filed its Ten-Day Statement pursuant to § 704(b)(1) asserting that this case is presumed to be an abuse under § 707(b). [dkt item 14]

On February 2, 2016, the UST filed a motion seeking dismissal of this case pursuant to § 707(b)(1) based on the presumption of abuse arising under § 707(b)(2) and based on the totality of circumstances under § 707(b)(3). [dkt item 21] The UST contends that while Debtor's Means Test Form indicates that there is no presumption of abuse, after making certain adjustments to Debtor's reported expenses, the presumption of abuse does arise.[4] For example, the UST asserts that several of Debtor's claimed expense deductions are not appropriate, e.g., optional phone services of $450.00, and including overstated student loan payments as priority claims of

---

[3] Section 101(8) of the Code defines such as debts those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).
[4] *See* ECF No. 21, Exhibit A – UST Form 22A (comparing Debtor's figures on the CMI Form and the Means Test Form with those of UST).

2

$3,924.35. Accordingly, the UST asserts that after making proper adjustments, Debtor's total monthly expenses of $18,518.62 drop to a point where her disposable income increases from ($817.62) to $2,948.41, and thus, a presumption of abuse arises.

On February 23, 2016, Debtor filed an objection to the motion to dismiss, arguing that the motion should be denied as untimely[5], or alternatively, that there is no abuse under the totality of circumstances, and filed an affirmation in support on March 1, 2016. [dkt items 22, 26]  The UST filed a response on March 7, 2016. [dkt item 27]

On March 11, 2016, a hearing was held on the motion to dismiss and the objection thereto, at which the Court directed both the UST and Debtor to file additional briefing limited to the issues of: (i) whether the Ten-Day Statement was untimely, and if so, (ii) whether it precludes the UST from proceeding on its § 707(b)(3) claim.  On March 25, 2016, the UST filed its sur-reply to the objection, to which Debtor filed its response on March 30, 2016. [dkt items 30, 31]

## DISCUSSION

Section 704(b) sets forth the duties of the UST in cases of individual chapter 7 debtors as they pertain to a determination of whether a case is an "abuse" as defined by § 707(b).  Among those duties is the obligation to review a debtor's schedules and statements, and to subsequently file with the court a statement as to whether the case is presumed to be an abuse under § 707(b); this Ten-Day Statement is due not later than ten days after the date of the first meeting of creditors. *See* 11 U.S.C. § 704(b)(1).  The Ten-Day Statement must be filed by the UST in every chapter 7 case, indicating whether or not the presumption of abuse arises.

---

[5] It should be noted that in her Objection, Debtor concedes that the UST's motion to dismiss "is timely filed only with respect to a claim under Section 707(b)(3)," however, rather conflictingly, later argues that, nevertheless, the motion should be denied because "it seems clear that a timely Statement from the United States Trustee is still a requirement." *See* Objection at p. 2; *but see id.* at p. 7.

3

In the event that the UST finds that the presumption of abuse does arise, within 30 days of the filing of the Ten-Day Statement, the UST has a duty to either: (i) file a motion to dismiss or convert the case under § 707(b), or (ii) file a statement with the reasons why the UST does not consider such a motion appropriate, e.g., if the UST believes that the debtor has demonstrated special circumstances that would rebut the presumption of abuse. *See* 11 U.S.C. § 707(b)(2).

*Timeliness of the Ten-Day Statement Under § 704(b)(1)*

The filing of a Ten-Day Statement pursuant to § 704(b)(1) is a prerequisite to seeking dismissal based on a presumption of abuse under § 707(b)(2). Thus, the threshold issue is whether § 704(b)(1) requires the Ten-Day Statement to be filed within ten days from the start of the first § 341 meeting or after the meeting has concluded.

This Court's analysis necessarily begins with an examination of the statute itself to determine if the statute is either plain or ambiguous. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012); *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). "[I]n determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)). "If the statutory language is clear, a court's analysis must end there." *See Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n.*, 530 U.S. 1, 6, (2000) ("[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."); *In re AJW Offshore, Ltd.*, 488 B.R. 551 (Bankr. E.D.N.Y. 2013).

4

However, "[s]tatutory language is ambiguous if it is susceptible to two or more reasonable meanings." *AJW*, 488 B.R. at 558 (quoting *Phillips*, 485 B.R. at 56). "In that setting, where the plain language as clarified by context fails to resolve any statutory ambiguity, a court may resort to canons of statutory construction to aid in its interpretation." *AJW*, 488 B.R. at 558; (citing *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012); *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)). "Significantly, statutory construction is a holistic endeavor; thus, a statute must be interpreted in light of the statutory scheme as a whole." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626 (1988); *AJW*, 488 B.R. at 558; *Phillips*, 485 B.R. at 59. *See also Roberts v. Sea-Land Services, Inc.*, 132 S. Ct. 1350, 1357 (2012) (quoting *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500 (1989)) (internal quotations omitted).

Section 704(b)(1) provides:

> [w]ith respect to a debtor who is an individual in this case under this chapter—(A) the United States trustee…shall review all materials filed by the debtor and, not later than 10 days after the *date of the first meeting of creditors*, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b).

11 U.S.C. § 704(b)(1) (emphasis added).

The phrase "date of the first meeting of creditors" as used in § 704(b)(1) is ambiguous. Pursuant to Bankruptcy Rule 2003(e), a § 341 meeting of creditors may commence on one date but be adjourned to another date, and thus, there may often be multiple dates for the first meeting of creditors. *See* FED. R. BANKR. P. 2003(e).[6] When a time period is to be measured from the *start* of the § 341 meeting, for instance, the Bankruptcy Code refers to the "first date set" for the

---

[6] (e) Adjournment. The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time. The presiding official shall promptly file a statement specifying the date and time to which the meeting is adjourned. FED. R. BANKR. P. 2003(e).

5

meeting, or otherwise references similarly unambiguous language. *See, e.g.*, § 521(a)(2)(B) ("within 30 days after the *first date set* for the meeting of creditors") (emphasis added); § 521(e)(2)(A)(i) ("not later than 7 days before the *first date set* for the first meeting of creditors") (emphasis added); § 1308(a) ("not later than the day before the date on which the meeting of creditors is *first scheduled to be held*") (emphasis added). In addition, the Bankruptcy Rules also use the phrase "first date set for the meeting of creditors under § 341(a)" when a time period is to be measured from the commencement of the meeting. *See, e.g.*, FED. R. BANKR. P. 1007(c); 1017(e)(1), (2); 1019(1)(B); 2002(h); 2015.3(b); 3002(c); 4002(b)(3), (4); 4004(a); 4007(c); 4008(a).

Other provisions of the Code creating requirements in relation to the § 341 meeting, however, have used different language. *See, e.g.*, § 521(a)(2)(A) (statement of intention is to be filed on or before "the date of the meeting of creditors"); § 521(a)(6) (redemption or reaffirmation of personal property subject to a security interest required "not later than 45 days after the date of the meeting of creditors").

Finally, Bankruptcy Rule 4003(b) unambiguously provides that objections to a debtor's claimed exemptions must be made "30 days after the meeting of creditors held under § 341(a) is concluded." *See* FED. R. BANKR. P. 4003(b).

The subject language of § 704(b)(1), "the date of the first meeting of creditors," is not used elsewhere in the Code in relation to time computation, and courts have disagreed on how § 704(b) should be read. *Compare In re Reed*, 422 B.R. 214 (C.D. Cal. 2009) (time runs from conclusion of meeting of creditors), *In re Persaud*, 486 B.R. 251 (Bankr. E.D.N.Y. 2013) (ten day period runs from conclusion of meeting of creditors), and *In re Cadwallder*, 2007 WL 1864154 (Bankr. S.D. Tex. 2007), *with Turner v. Close* (*In re Close*), 384 B.R. 856 (Bankr. D. Kan. 2008) (time runs

from first date set for meeting of creditors), *In re Draisey*, 395 B.R. 79 (B.A.P. 8th Cir. 2008), and *In re Robertson*, 370 B.R. 804 (Bankr. D. Minn. 2007).

Courts construing § 704(b) as referring to the commencement of the § 341 meeting have held that a plain reading of the statutory language requires such an interpretation. *See Close*, 353 B.R. at 918 ("The language is not vague or ambiguous and does not need extraneous verbiage to clarify its meaning…"). It has been argued that such a reading also provides a "single and easily discernible date" from which to measure the time period. *See In re Wise*, 453 B.R. 220, 226 (Bankr. D. Vt. 2011); *In re Clark*, 393 B.R. 578, 583 (Bankr. E. D. Tenn. 2008) (holding that the date "will be even more certain if it means the first date set for the meeting of creditors can be determined from the docket and the notices sent by the clerk's office"). Courts adopting the first date set approach have stated that the purpose of the statute is to require the UST to give the debtor and other parties notice early in the case as to whether a presumption of abuse arises, which would "hardly work" if the UST is allowed to delay the filing of the statement until ten days after the § 341 meeting is concluded. *Clark*, 393 B.R. at 583; *see also Robertson*, 370 B.R. at 811.

Other courts, however, have interpreted § 704(b) to mean that the time period should be measured from the conclusion of the § 341 meeting. In their view, the term "first meeting of creditors" is widely used to refer to the entire § 341 meeting, from its commencement to its conclusion. *See Persaud*, 486 B.R. at 257 ("[T]he use of the word 'first' in the statutory language 'the date of the first meeting of creditors' does not compel the conclusion that the time period begins to run at the commencement of the § 341 meeting."); *In re Molitor*, 395 B.R. 197, 201 (Bankr. S.D. Ga. 2008) ("'[F]irst meeting of creditors' is a term of art among bankruptcy practitioners and synonymous with 'the 341 meeting' and the 'meeting of creditors.'"); *see also*

7

*Reed*, 422 B.R. at 226 ("[C]ommon parlance…often denominates the § 341(a) meeting in its entirety the 'first meeting of creditors.'").

As noted in Collier's, "logically it makes sense to read [the § 704(b)] deadline as running from the *conclusion* of the meeting of creditors, rather than the first date set for the meeting of creditors, which is specifically referenced in some other Code provisions enacted at the same time."[7] *See* Alan N. Resnick and Henry J. Sommer, 6 COLLIER ON BANKRUPTCY ¶ 704.16[1] (16th rev. ed. 2011) (emphasis added). As the *Persaud* court held, "[t]he most compelling reason to interpret § 704(b) as requiring the ten day statement to be filed after the conclusion of the § 341 meeting is that it would be illogical to require the U.S. trustee to decide whether a presumption of abuse arises before having adequate opportunity to make that decision." *Persaud*, 486 B.R. at 258. Thus, for instance, if the debtor is unable to attend the § 341 meeting on the first date set, or otherwise fails to provide all necessary documents, the UST might not have all of the materials necessary to make an accurate determination as to whether a presumption of abuse arises. *See Reed*, 422 B.R. at 225 ("Presumably, there are often discrepancies in the information submitted by debtors; continuing the § 341 meeting allows the UST to gather needed information before conducting the meeting"); *see also* 6 COLLIER ON BANKRUPTCY ¶ 704.16[2] at 704-35.

This interpretation—that the time to file the statement runs from the conclusion of the § 341 meeting—also advances certain important policy goals underlying the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Section 704(b)(1) was added to the Bankruptcy Code as part of BAPCPA in 2005; Congress enacted BAPCPA in order to correct perceived abuses of the bankruptcy system. *See Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716, 721 (2011). In particular, Congress adopted the means test—"[t]he heart of [BAPCPA's]

---

[7] *See, e.g.*, 11 U.S.C. § 521(e)(2)(A).

consumer bankruptcy reforms, H.R.Rep. No. 109-31, pt. 1, p. 2 (2005), and the home of the statutory language at issue here—to help ensure that debtors who can pay creditors do pay them." *Id.* (internal citations and quotations omitted). Indeed, the purpose of the means test is "to calculate the debtor['s] ability to pay back creditors with monthly disposable income and in this manner to assess whether a 'presumption of abuse' arises under 11 U.S.C. § 707(b)(2)." *Reed*, 422 B.R. at 217. Thus, "[t]o require the UST to make an immediate determination of abuse based on incomplete or inaccurate information would not only be illogical, but would be contrary to BAPCPA's goals of restoring 'integrity in the bankruptcy system' and 'ensur[ing] that the system is fair to both debtors and creditors.'" *Id.* at 225 (quoting H.R.Rep. No. 31(I), at 2, 109 Cong., 1st Sess. (2005)).

For these reasons, this Court concludes that the appropriate time to file the Ten-Day Statement runs from the conclusion, rather than the commencement, of the § 341 meeting. Accordingly, this Court concludes that the UST timely filed its statement pursuant to § 704(b) within ten days following the conclusion of the § 341 meeting.[8]

*Whether an Untimely Ten-Day Statement Precludes a Motion to Dismiss Under § 707(b)(2)*

The Court also concludes that even if the Ten-Day Statement was deemed untimely, it would not warrant automatic dismissal of the UST's motion to dismiss pursuant to § 707(b)(2). Section 704(b)(2) provides:

> The United States trustee…shall, not later than 30 days after the date of filing a statement under paragraph (1), either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States trustee…does not consider such motion to be appropriate…

11 U.S.C. § 704(b)(2).

---

[8] *See* FED. R. BANKR. P. 9006(a)(1)(C).

9

Several courts have held that a UST's failure to timely file a statement under § 704(b)(1) precludes the UST from filing a motion to dismiss under § 707(b)(2). *See, e.g.*, *Wise*, 453 B.R. at 226; *Draisey*, 395 B.R. at 82; *Clark*, 393 B.R. at 583; *Robertson*, 370 B.R. at 809; *In re Perrotta*, 378 B.R. 434, 438 (Bankr. D.N.H. 2007). In so holding, the *Robertson* court reasoned that the word "shall" in § 704(b)(1)(A) provides a mandate, thus, "establish[ing] its procedural prescriptions as essential prerequisites for any subsequent motion." *Robertson*, 370 B.R. at 809. The court further held that "a motion that invokes the presumption [of abuse] can be made only if the UST has already, timely, put of record his unequivocal conclusion that the presumption lies in the case." *Id.* at 811; *see also Reed*, 422 B.R. at 222-23 (holding that one of the purposes of BAPCPA was to "streamline case administration by implementing a series of measures that required debtors to comply with strict deadlines") (internal citations omitted).

This Court disagrees. While the mandatory language in § 704(b) imposes a duty on the U.S. Trustee, it does not impose a penalty for failure to perform that duty. *See Cadwallder*, 2007 WL 1864154 at *6 (holding that "§ 704(b) establishes a duty, but does not establish the penalty for failure to perform that duty); *accord Persaud*, 486 B.R. at 260; *see also In re Jasper*, 414 B.R. 83, 88 (Bankr. E. D. Va. 2009) (agreeing with *Cadwallder* that an untimely statement does not bar UST from filing a motion to dismiss). As explained by the *Persaud* court, "deadlines imposed on government agencies by statute do not invalidate actions taken after that deadline unless such a consequence is specified by statute." *Persaud*, 486 B.R. at 261 (citing *Cadwallder*, 2007 WL 1864154 at *6).

In *Barnhart v. Peabody Coal*, 537 U.S. 149, 123 S. Ct. 748 (2003), the Supreme Court held that a statutory provision requiring the Commissioner of Social Security to act within a specified time frame was "meant to spur him to action, not limit the scope of his authority."

> If a statute does not specify a consequence for noncompliance with statutory timing provisions, federal courts will not ordinarily impose their own coercive sanction…A statute directing official action needs more than a mandatory "shall" before the grant of power can sensibly be read to expire when the job is supposed to be done.

*See id.* at 158-161. Section 704(b) does not specify any consequences for failure to timely file the Ten-Day Statement. As noted in *Cadwallder*, prior to BAPCPA, § 704 imposed duties only on the chapter 7 trustee without specifying any consequence for noncompliance; there is no indication that BAPCPA intended to change the purpose of that section by instituting such penalties on the UST. *Cadwallder*, 2007 WL 1864154 at *7 ("Section 704(b) does not establish any penalty or disadvantage that the U.S. Trustee incurs by failing to file a timely statement or by not strictly meeting the requirement in § 704(b)(2) to file a motion to dismiss within 30 days after making the statement.").

Further, Congress did not limit prosecution of motions to dismiss under § 707(b) to the U.S. Trustee. Section 707(b) provides that a court may dismiss a case for abuse on its own motion or on a motion by the UST, trustee, or any party in interest. 11 U.S.C. § 707(b)(1). Thus, even if strict compliance with § 704(b) were a prerequisite for the UST to bring a motion to dismiss under § 707(b), any time-bar applicable to the UST for failure to timely file a statement would not extend to other parties in interest. "[A]pplying § 704 as a statute of limitations would mean that an untimely statement by the U.S. trustee 'shift[s] the burden [of seeking dismissal under § 707(b)(2)] to the court or to creditors,' which would serve no beneficial purpose." *Persaud*, 486 B.R. at 261 (quoting *Cadwallder*, 2007 WL 1864154 at *7). Accordingly, the duty imposed on the UST appears to be for the benefit of creditors, not the debtor, in that creditors would benefit from the UST undertaking to file the motion, rather than shifting the burden to them. *Id.* Further, § 704(b) only requires the Ten-Day Statement to be filed with the court with a copy provided to creditors;

11

notice to the debtor is not required.  In addition, Congress' lack of a provision allowing for an extension of the time to file the statement further indicates that § 704(b) imposes a duty, rather than a deadline. *See id.*

Lastly, as noted in *Persaud*, "if § 704(b) is understood to require a statement within ten day of the commencement of the § 341 meeting, and if an untimely statement precludes the UST from filing a motion to dismiss under § 707(b)(2), the initial clause of Bankruptcy Rule 1017(e)(1) is superfluous." *Id.* at 262.  Rule 1017(e)(1) provides that:

> *Except as otherwise provided in § 704(b)(2)*, a motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss.

FED. R. BANKR. P. 1017(e)(1) (emphasis added).  Rule 1017(e)(1) carves out an exception "as provided in § 704(b)(2)", to the requirement that a motion to dismiss under § 707(b) must be filed within 60 days from the first date set for the § 341 meeting.  Because § 704(b)(2) requires the UST to file the motion to dismiss (or a statement that such a motion is not appropriate) "not later than 30 days after the date of filing [the Ten-Day Statement]", the view that the deadline for filing the statement runs from the commencement of the § 341 meeting necessarily means that the motion to dismiss must always be filed no later than 40 days after the first date set for the § 341 meeting. *See* 11 U.S.C. § 704(b)(2).  Thus, "the only way § 704(b) could ever provide an extension of the deadline set by Rule 1017(e)(1) would be if the time for the filing of the statement begins to run at the conclusion of the § 341 meeting, or if a late-filed statement does not bar a later motion to dismiss brought within the 30 day time frame set by § 704(b)(2)." *Persaud*, 486 B.R. at 262. Accordingly, this Court concludes that an untimely statement does not preclude the UST from seeking dismissal under § 707(b)(2).

12

*Whether a Ten-Day Statement is Required for Dismissal Under § 707(b)(3)*

Alternatively, Debtor argues that a timely Ten-Day Statement is also required for a motion to dismiss under § 707(b)(3). Debtor contends that § 704(b)(1)(A) "does not differentiate as between alleged abuse under § 707(b)(2), or § 707(b)(3)," i.e., that a timely Ten-Day Statement is a prerequisite to the UST seeking dismissal under § 707(b)(3). [dkt item 22, 31] Debtor's argument is without merit.

Courts have consistently held that the failure to timely file the Ten-Day Statement does not bar the UST from seeking dismissal under § 707(b)(3) based on the totality of circumstances; said otherwise, dismissal of a debtor's case under § 707(b)(2) or § 707(b)(3) are distinct alternatives. Any "time limitations imposed by § 704(b)(1) apply only to motions to dismiss under § 707(b)(2)." *Reed*, 422 B.R. at 231 ("Even had the court concluded that the UST failed to file a timely Ten-Day Statement under § 704(b)(1) and thus that he was barred from seeking dismissal of the [debtors'] case under § 707(b)(2), the untimely Ten-Day Statement would not prevent the UST from seeking dismissal under § 707(b)(3)."); *see also* 6 COLLIER ON BANKRUPTCY ¶ 704.16[1] (even if the § 704(b) statement is untimely filed, the UST may still seek dismissal under § 707(b)(3)).

Moreover, motions to dismiss pursuant to § 707(b)(3) are governed by the broader Bankruptcy Rule 1017(e)(1). *See, e.g., Reed*, 422 B.R. at 231. As noted supra, Rule 1017(e)(1) provides that a motion to dismiss under § 707(b) "may be filed only within *60 days after the first date set* for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 1017(e)(1) (emphasis added). Here, 60 days after the first date set for the § 341 meeting was February 8, 2016; thus, the instant motion timely was filed on February 2, 2016 pursuant to Rule 1017(e)(1).

13

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Court finds that the Ten-Day Statement pursuant to § 704(b) was timely filed after the conclusion of the § 341 meeting, and that in any event, an untimely statement does not preclude the United States Trustee from proceeding on its motion to dismiss under § 707(b)(2) or (3). The Court further concludes that an evidentiary hearing is necessary in order to determine whether dismissal of this case is warranted. A separate order will issue.

Dated at Bridgeport, Connecticut this 4th day of October 2016.

By the Court

*/s/ Alan S. Trust*

Honorable Alan S. Trust
United States Bankruptcy Judge